# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs November 20, 2013

## STATE OF TENNESSEE v. MONTEZ DEWAYNE BIRT

**Appeal from the Criminal Court for Hamilton County**
**No. 271916     Don W. Poole, Judge**

---

### No. E2013-00957-CCA-R3-CD-FILED-MARCH 3, 2014

---

The Defendant, Montez Dewayne Birt, pled guilty to aggravated burglary and received a six-year, suspended sentence. Thereafter, a violation warrant was filed, and following a hearing, the trial court revoked the sentence and ordered the Defendant to serve the balance of his sentence in confinement based upon his failure to report to his probation officer. The Defendant appeals the revocation and order of total incarceration. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Ardena J. Garth, District Public Defender, and Richard Kenneth Mabee, Assistant District Public Defender, for the appellant, Montez Dewayne Birt.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Senior Counsel; William H. Cox, III, District Attorney General; and Jason Demastus, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION
### FACTUAL BACKGROUND

For offenses committed against Matt Winget on August 14, 2008, the Defendant was charged with aggravated burglary, a Class C felony, and theft of property, a Class A misdemeanor.[1] See Tenn. Code Ann. §§ 39-14-103, -105, -403. The Defendant pled guilty

---

[1] We are unable to provide the factual basis underlying these offenses because a transcript of the guilty plea (continued...)

to aggravated burglary on September 29, 2009, and the theft charge was dismissed. Pursuant to the terms of the plea agreement, the Defendant received a six-year sentence, as a Range I, standard offender, to be served on supervised probation. As a part of the plea agreement, the Defendant also admitted he was in violation of two prior suspended sentences (Case No. 258278, a one-year sentence, and Case No. 261270, a three-year sentence) and agreed that the six-year sentence in this case would be served consecutively to those sentences.

After serving time in the prior cases, the Defendant was released from the Morgan County Correctional Complex on July 9, 2011. The Defendant was required to report to the Chattanooga Probation Office on this case within seventy-two hours of his release. Thereafter, on July 18, 2012, a probation violation report was filed, wherein it was alleged that the Defendant had engaged in new criminal activity on November 21, 2011, and on April 18, 2012, resulting in charges for vandalism/malicious mischief, burglary, aggravated robbery, aggravated burglary, and two counts of theft. It was further stated that the Defendant had failed to report to his probation officer since his July 9, 2011 release from incarceration, including failure to inform that officer of these new charges. He was considered an absconder from supervision, and a warrant was issued for the Defendant's arrest.

At the revocation hearing which followed, Justin Strand testified that he was the Defendant's probation officer in this case. Mr. Strand stated that the violation warrant was filed based upon the Defendant's failure to report and acquisition of new charges. According to Mr. Strand, the new charges against the Defendant were still pending, and the Defendant had never reported "at all" following his release from incarceration. Mr. Strand was asked if he had tried to initiate contact with the Defendant during this time, and Mr. Strand replied that he had mailed a letter to the Defendant's listed address on March 20, 2012, which instructed him to report by April 3, 2012. That letter was not returned, and the Defendant failed to report. When asked if he had any further contact with the Defendant, Mr. Strand recalled that the Defendant left him a message "[o]nce or twice" and that he had actually spoken with the Defendant on one occasion about "[t]his hearing." Mr. Strand also testified that the Defendant reported for "about a year" on his probation in the two, prior cases before that four-year sentence was revoked. On cross-examination, Mr. Strand confirmed that this was the Defendant's "first violation" in this case.

The trial court noted that there was "apparently no proof" from the State on the new charges, and then asked Mr. Strand if the Defendant had reported those new charges to him. Mr. Strand stated that the Defendant had not. The State offered no other proof.

[1](...continued)

hearing is not included in the appellate record.

The twenty-seven-year-old Defendant then testified "for the limited purposes of this probation hearing," meaning no questions would be asked about the pending charges. When asked "what happened with [his] probation and [his] failure to appear," the Defendant gave the following response:

> I had three years probation, and like when I had went to prison, I thought I had the split confinement, get out on six years unsupervised. That's what I thought. But when I had got out, I didn't know I had to report to no P.O. though, and like I had caught some new charges, you know. But if I knowed [sic] I had to go through the P.O. I had, I would have reported then. My memory's been messed up and I draw SSI check a month, then like I didn't know I had to report, at all.

The Defendant confirmed that he believed that this six-year sentence was unsupervised. He also explained that he received a check from social security due to his "slow learning." He further stated that he could not read very well and would have to ask questions to gather information.

The Defendant asked for a "second chance" and claimed he would "report anytime that [the judge] want[ed him] to." He requested an alternative to incarceration—either "start [his] probation over and put [him] on intensive probation or house arrest[.]" If granted house arrest, he would live with his mother, who was present in the courtroom. There was a telephone at that location. He testified that he also had been accepted to the "House of Refuge" program and was "willing to do public workdays[.]" According to the Defendant, his previous incarceration was his "first time going to prison[,]" and he did not "want to go back." He explained that he wanted to be able to provide care for his five-month-old child.

On cross-examination, the Defendant confirmed that his criminal history[2] included "at least two different sets of charges . . . that [he had] been sentenced on, did some time[,] and got on probation[.]" He agreed that he "ultimately got violated" and "had these new charges still pending[.]" The Defendant stated that he did not recall reviewing his plea agreement with his attorney in this case and that he did not remember stating at the plea hearing that he was agreeing to supervision.

The Defendant was then asked why he had attempted to contact Mr. Strand via telephone. The Defendant replied, "To try to find out what was this about, that I was trying to ask him and I called him and I was in Silverdale, I was trying to tell him that I didn't know I had to report at all." According to the Defendant, he only knew to call Mr. Strand because

---

[2] No presentence report is included in the record.

"[a] lawyer" had told him to do so. The Defendant further stated that he had never received a letter in the mail from Mr. Strand. Finally, the Defendant could not remember what he was told about reporting, if anything at all, from Morgan County officials, when he was released from their custody on July 9, 2011.

Upon questioning from the trial court, the Defendant stated that he was unaware that the plea agreement specifically stated that the sentence was to be served on supervised probation. He further explained that he was not on parole following his release, that he "had flattened" his sentence, serving thirty-two months.

In closing arguments, the State suggested, "given his circumstances, given that he did not have a place to go, maybe an 11/29 to serve and reinstate and give him a chance to comply with P.O. Strand and report like he's supposed to, maybe that would be appropriate." Defense counsel asserted, "The issue is, and it may be my argument and we may have to deal with that with other proof, I don't know if Morgan County would have given him something about this case" because "TDOC did not have this case." The court replied, "And I don't know that either." Defense counsel further noted that the State had offered no proof about the new charges and that this case was simply about not reporting. Defense counsel requested "something short of requiring him to serve all the time in this matter[.]"

The trial court found that the Defendant had violated the conditions of his probation and ordered the entire six-year sentence into execution. In so concluding, the trial court reasoned as follows:

> Well, the records clearly show it, and certainly the only thing that's before the [c]ourt today is [the Defendant's] failure to report to the probation office, for about over a year it looks like, until the sentence was executed. But I am looking at the papers and he did indicate that he certainly had some knowledge of what he was doing. He conceded violations in two cases, a one-year case and a three-year case, and this was . . . consecutive to that, suspended, supervised.
>
> So I just find it difficult to believe, based upon the proof I've heard, that [the Defendant] did not realize that he had to report to a probation office when he was released from custody. The file indicates that this was executed on August 1, 2012, so for over a year after letters were written to [the Defendant], he did not report to the probation office. Now, certainly if he's not reporting, as a secondary matter is you're not reporting new cases, but I don't consider guilt or innocence in regard to the new cases, but the failure to report, or failure to report those new charges, I understand those, since he wasn't reporting, but the principal violation is the failure to report. I do find, clearly,

by [a] preponderance and by overwhelming evidence, that he has violated the terms of his probation.

. . . The credible evidence indicates that it was certainly supervised and that based upon the file, it indicates that [the Defendant] did now or should have known and should have reported, and I find he did not report.

The Defendant now appeals that decision.

## ANALYSIS

On appeal, the Defendant argues that the trial court erred when it revoked his probationary sentence and ordered the full six-year sentence into execution. Specifically, the Defendant contends "that there was an abuse of discretion by the trial judge, based upon the sparsity of evidence, and upon what appears to be just a misunderstanding of his responsibilities by the [Defendant] in not reporting when he got out of prison on the separate case." The State responds that the trial court properly revoked the Defendant's probationary sentence and ordered him to serve his original sentence. We agree with the State.

A trial court may revoke a sentence of probation upon finding by a preponderance of the evidence that the defendant has violated the conditions of release. Tenn. Code Ann. § 40-35-311(e). The decision to revoke probation is in the sound discretion of the trial judge. State v. Kendrick, 178 S.W.3d 734, 738 (Tenn. Crim. App. 2005); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). The judgment of the trial court to revoke probation will be upheld on appeal unless there has been an abuse of discretion. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). To find an abuse of discretion in a probation revocation case, "it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." Id. (citing State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978); State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)); see also State v. Farrar, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011). Such a finding "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" State v. Shaffer, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting State v. Moore, 6 S.W.3d 235, 242 (Tenn. 1999)).

The trial court found that the Defendant violated the conditions of his probation solely on his failure to report following his release from incarceration on July 9, 2011.[3] The

_____

[3] The State incorrectly states that the trial court found the additional violations of "incurring new charges, and by failing to inform his probation officer of those new charges." To the contrary, the trial court noted that the State had failed to (continued...)

Defendant argues that based "upon the sparsity of evidence" and his "misunderstanding of his responsibilities . . . when he got out of prison on the separate case[,]" the trial court abused its discretion in revoking his probation. However, the trial court did not find the Defendant's testimony credible, noting that the plea paperwork referenced supervision, that the Defendant's probation officer had written him advising him to report, and that the Defendant failed to report for over a year. The trial court determined that the Defendant "did know or should have known and should have reported," but he failed to do so. In a probation revocation hearing, the credibility of the witnesses is determined by the trial court. Mitchell, 810 S.W.2d at 735. We may not disturb the trial court's finding in this regard. A "technical violation" is sufficient to support a probation revocation. See, e.g., State v. Isaac Thomas, No. E2011-00565-CCA-R3-CD, 2011 WL 6016916, at *2 (Tenn. Crim. App. Dec. 5, 2011) (affirming revocation because defendant violated his probation by repeatedly failing to report, by failing to provide proof of employment, by moving without notifying his probation officer, and by not having a successful home visit completed), perm. app. denied, (Tenn. Mar. 7, 2012); State v. Herbert Russell Johnson, No. E2003-02580-CCA-R3-CD, 2004 WL 1170030, at *4 (Tenn. Crim. App. May 26, 2004) (affirming revocation because defendant violated the terms of his probation by leaving his mother's residence, missing his scheduled probation meetings, and failing to contact his probation officer).

The Defendant also asserts that the trial court abused its discretion in ordering the Defendant to serve the remainder of his sentence in confinement. Rather, "if a trial court determines that a defendant has violated the conditions of probation, it has the authority to revoke the defendant's probation and cause execution of the original judgment." State v. Hunter, 1 S.W.3d 643, 646 (Tenn. 1999). The trial court acted within its discretionary authority to revoke the Defendant's probation and impose his original six-year sentence. See Tenn. Code Ann. §§ 40-35-310, -311(e). Accordingly, the Defendant is entitled to no relief.

CONCLUSION

In sum, we conclude that the trial court did not err by revoking the Defendant's probationary sentence and by ordering him to serve the balance of his original, six-year sentence in confinement. Accordingly, we affirm the judgment of the trial court.

_____
D. KELLY THOMAS, JR., JUDGE

---

[3](...continued)

put on any proof of the new charges and that, while the Defendant had failed to report those new arrests, this was "as secondary matter" of the "principal violation" of failing to report.

-6-